UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-60119-CR-SMITH/VALLE

UNITED STATES OF AMERICA

vs.

ROBERTO GERONIMO,

        Defendant.

_____/

## FACTUAL PROFFER

The United States of America and Roberto Geronimo (the "Defendant") agree that, were this case to proceed to trial, the United States would prove beyond a reasonable doubt the following facts, among others, which occurred, in the Southern District of Florida:

On or about February 6, 2020, a federal grand jury in the Southern District of Florida returned an indictment charging the Defendant with conspiracy to distribute five kilograms or more of cocaine, in violation of Title 21, United States Code, Sections 846 & 841(a)(1). *See* Case No. 20-20066-CR-WILLIAMS (S.D. Fla.). At all relevant times, the Defendant knew he was under federal indictment, and was on bond pending trial in that case.

Starting in or around June 2020, the Defendant participated in a scheme to submit and cause the submission of false and fraudulent applications for loans and grants made available through the Small Business Administration to provide relief for the economic effects caused by the COVID-19 pandemic, including Paycheck Protection Program ("PPP") loans and Economic Injury Disaster Loans ("EIDL"); paid kickbacks in furtherance of the scheme; and received the proceeds from fraudulent PPP loans and EIDLs submitted on behalf of a company under his control.

In or around May 2020, W.D., a tax preparer who controlled a company called CMS, began recruiting individuals with business entities to submit false and fraudulent applications for PPP loans and EIDLs in exchange for kickbacks. M.M. and E.M. were recruiters for W.D.

In or around June 2020, E.M. recruited the Defendant, who controlled a company called BSC, into the scheme. On or about June 14, 2020, in the afternoon, the Defendant and E.M. met at a Hooter's restaurant, and discussed, among other matters, that E.M. knew someone who could help the Defendant obtain a $150,000 to $200,000 PPP loan for his liquor store, BSC, for a 20% fee. Based on a prior PPP loan application that was not submitted as part of this conspiracy and that contained accurate information about BSC, the Defendant knew what payroll documentation was required to obtain a PPP loan and that individuals subject to federal indictment, like himself, were ineligible.

On or about June 14, 2020, at approximately 3:30 p.m., the Defendant sent a WhatsApp message to E.M. attaching a February 2020 bank statement for BSC. On or about June 14, 2020, between approximately 3:30 p.m. and 3:37 p.m., E.M. sent to M.M. via WhatsApp the February 20202 BSC bank statement, photographs of the front and back of the Defendant's Florida driver's license, and the following information about BSC seeking a PPP loan for $400,000 for 12 employees.

BUSINESS EIN#82-3242040
BUSINESS NAME: [BSC]
INCORPORATED DATE: 10/19/2017
SS#[REDACTED]
CONTACT#[REDACTED]
EMAIL: [REDACTED]@hotmail.com
400k 12 employees

On or about June 18, 2020, through a loan processor based in Redwood City, California that utilized servers in Northern Virginia to process PPP loan applications ("Loan Processor #1"),

a PPP loan application was submitted electronically on behalf of BSC using an IP Address ending in .64 that was associated with W.D.'s company, CMS. The BSC PPP loan application submitted electronically through Loan Processor #1 requested a PPP loan in the amount of $249,990 purportedly to pay a monthly payroll of approximately $99,996 for 12 employees. An IRS Form 941-SS (titled, "Employer's Quarterly Federal Tax Return") for the first quarter (January, February, and March) of 2020 was attached to the application, which purported to report that BSC had 12 employees and quarterly wages of $375,400. Florida Department of Revenue records for BSC show payroll expenses did not exceed $12,770 for no more than two salaried employees during the first quarter (January, February, and March) of 2020.

A subsequent search of CMS's office revealed photographs of the front and back of the Defendant's Florida driver's license and an electronic version of the same IRS Form 941-SS for BSC on the CMS server. In addition, law enforcement found paper records related to BSC's fraudulent PPP loan, including corporate records for BSC, and an approval letter regarding BSC's PPP loan application. The corporate records contained handwritten notes with the Defendant's social security number, telephone number, birthdate, and address.

On or about June 18, 2020, based on the representations made in the loan application paperwork and supporting documents, BSC's PPP loan application was approved by Bank Processor #1. On or about June 19, 2020, Bank #2, a financial institution insured by the Federal Deposit Insurance Corporation, wired approximately $249,990 in PPP loan proceeds into a BSC bank account ending in -1104 for which the Defendant was an authorized signatory. Prior to the receiving the approximately $249,990 in fraudulent PPP loan proceeds, BSC's bank account had a balance of approximately $732.

After the Defendant, through BSC, received the fraudulent PPP loan proceeds, E.M. facilitated the Defendant's payment of a kickback to M.M. and W.D. in the approximate amount of $63,497.50, which was approximately 25% of the $249,990 loan amount. On or about June 19, 2020, a check in the approximate amount of $63,497.50, made payable to E.M., was drawn from BSC's bank account ending in -1104 and subsequently deposited into a bank account ending in -1515 under the control of E.M. On the same day, E.M. obtained two cashier's checks from the bank account ending in -1515: one payable to W.D.'s company, CMS, for approximately $42,501.50 and another payable to M.M.'s spouse for approximately $16,000. A copy of the $42,501.50 cashier's check from MLG to CMS was seized during the search of CMS's office.

Thereafter, the Defendant agreed with E.M. that the Defendant would recruit additional loan applicants who would pay kickbacks equal to 25% of loan proceeds, with the Defendant and E.M. to split 5%. Approximately 15 individuals recruited by the Defendant provided information for loan applications either directly or through the Defendant to E.M, but none of the loan applications for the Defendant's recruits were approved.

These are not the only facts known to the United States of America in this matter, nor are they all of the facts that the United States of America would present, had this case gone to trial.

JUAN ANTONIO GONZALEZ
ACTING UNITED STATES ATTORNEY

DATE: 8/23/2021    BY: _____
STEPHANIE HAUSER
ASSISTANT U.S. ATTORNEY

DATE: 7/24/21    BY: _____
MARK EIGLARSH
ATTORNEY FOR DEFENDANT

DATE: 7/24/21    BY: _____
ROBERTO GERONIMO
DEFENDANT